UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN K. LUTHER,

        Plaintiff,                      CIVIL ACTION NO. 11-13911

        v.                              DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
<u>ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On September 8, 2011, Plaintiff filed this case, seeking judicial review of the Commissioner's decision to deny benefits. (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision. (Dkt. No. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. Nos. 11, 13).

    *B.    Administrative Proceedings*

Plaintiff applied for benefits on January 17, 2010, alleging that he became unable to work on October 10, 2008. (Tr. 20, 133-139). The application was initially denied by the Commissioner on March 31, 2010. (Tr. 20, 58-62). Plaintiff requested a hearing, and on May 26, 2011, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Michael F. Wilenkin, who considered the case *de novo*. On June 16, 2011, the ALJ found that Plaintiff was

not disabled. (Tr. 17-31). Plaintiff requested a review of this decision. (Tr. 7-16). On August 26, 2011, the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits[1] (AC-9E, Tr. 193-201), the Appeals Council denied Plaintiff's request for further review. (Tr. 1-6).

In light of the entire record in this case, this Magistrate Judge finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.     STATEMENT OF FACTS**

　　*A.     ALJ Findings*

Plaintiff was 43-years-old on his date last insured. (Tr. 26). Plaintiff has past relevant work in automotive service, counter parts and sales, and as a machine technician. (Tr. 26, 163-170). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from October 10, 2008 (Plaintiff's alleged disability onset date) through June 30, 2009 (Plaintiff's date last insured). (Tr. 22).

At step two, the ALJ found Plaintiff had the following "severe" impairment: Reflex Sympathetic Dystrophy ("RSD") of the right hand with continual pain. (Tr. 22).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. (Tr. 23)

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "one-handed light work." (Tr. 23).

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 26).

At step five, the ALJ denied Plaintiff benefits, because he found that Plaintiff could perform a significant number of jobs available in the national economy, such as inspector (2,000 jobs in Southeast Michigan; 4,000 in the State) and surveillance monitor (1,400 jobs in Southeast Michigan; 2,800 in the State). (Tr. 27).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

At the administrative hearing, Plaintiff testified that on October 6, 2008, a press motor crushed his right (dominate) hand. (Tr. 38, 40-41, 45). Plaintiff lost function in his hand, and he has continuous pain that causes him to tremor. (Tr. 41-42). Plaintiff described the pain as "unbearable" at times. (Tr. 42). He wears a brace on his right hand and wrist to prevent his hand from curling up and his fingernails from digging into his skin. (Tr. 42). According to Plaintiff, the pain in his right hand from the injury is "the only problem that keeps [him] from working." (Tr. 44-45).

Plaintiff testified that the pain decreases his appetite and prevents him from sleeping at night. (Tr. 45). Plaintiff takes Darvocet and Vicodin for pain. (Tr. 41). He also uses a catheter. (Tr. 43). Plaintiff attempted physical therapy to no avail. (Tr. 43). Plaintiff testified that the Vicodin eases the pain "a little bit," but it makes everything go "in slow motion." (Tr. 44, 47). In addition, Plaintiff says the Darvocet causes a lack of concentration. (Tr. 184).

Plaintiff does not drive often because it is difficult for him to turn the key and shift gears with his left hand. (Tr. 36). He cannot tie his shoes, put his socks on, button his clothes, or zip his clothes. (Tr. 45-46). Plaintiff can dust around the house. (Tr. 46). Plaintiff testified that his typical day consists of watching television, dusting, and listening to the radio. (Tr. 47).

Finally, Plaintiff testified that he collected unemployment for 26 weeks after his injury in October 2008. (Tr. 38-39). While he was collecting unemployment, he applied for work at auto parts stores and machine shops. (Tr. 46-47).

  **2.**  **Medical Evidence**

The Court focuses on Plaintiff's medical evidence from October 10, 2008 through June 30, 2009, Plaintiff's alleged onset disability date through the date he was last insured.

On October 22, 2008, Plaintiff visited Dr. Jennifer Hichme complaining of right hand pain. Plaintiff described the pain as a burning sensation and numbness. (Tr. 225). Dr. Hichme prescribed Plaintiff Vicodin and Valium, and referred him for a bone scan. (Tr. 226).

On October 28, 2008, Dr. John P. Seitz performed a limited bone scan at the William Beaumont Hospital. (Tr. 254). Dr. Seitz found that Plaintiff had a mild reduction of flow in his right hand and wrist as compared to the left hand and wrist. Dr. Seitz said "[t]here is no sign of an occult fracture involving the right wrist or hand. There is evidence of mild synovitis involving the intercarpal joints, and probably mild-early arthritis within several interphalangeal joints." (Tr. 254).

On November 12, 2008, Plaintiff visited Dr. Mark P. Koniuch complaining of numbness in his fingers and the inability to move his fingers. (Tr. 203). Dr. Koniuch was concerned about Plaintiff's "profound and significant stiffness of all the fingers of the right hand." (Tr. 204). Dr. Koniuch gave Plaintiff an Ace wrap, instructed him to use his right hand for normal daily

activities as tolerated, and attend occupational hand therapy. (Tr. 204). X-ray examinations of Plaintiff's right hand and small finger identified no fractures. (Tr. 304).

On November 19, 2008, Plaintiff reported to Beaumont Rehabilitation Services that the Vicodin helped improve his pain, but any use of his hand increased the pain. (Tr. 289). Laura Chludzinski, O.T.R. indicated that Plaintiff has severe difficulty with all activities due to loss of motion, and he has "very low" pain tolerance. (Tr. 289). She anticipated treatment would require more than 12 visits. (Tr. 290). After six visits, Plaintiff's pain remained "severe." During manual therapy techniques, Plaintiff became nauseous. (Tr. 292).

On December 16, 2008, Plaintiff visited Dr. Koniuch for a reevaluation of his right hand injury. Dr. Koniuch indicated that Plaintiff has ongoing problems with swelling and stiffness of the right hand, and he is unable to move his fingers. (Tr. 283). According to Dr. Koniuch, Plaintiff has some motion of the thumb, although significantly restricted. (Tr. 283). Plaintiff has attended occupational hand therapy although there has been very little progress. Dr. Koniuch said there is concern about the development of a complex regional pain syndrome. Plaintiff chose not to undergo EMG testing because he is "phobic of needles." (Tr. 283). Plaintiff was diagnosed with complex regional pain syndrome of the right upper extremity. (Tr. 283).

On January 27, 2009, Plaintiff visited Dr. Hichme because he did not have any feeling in his right hand. (Tr. 215). Plaintiff's EMG was essentially normal. (Tr. 215).

On February 5, 2009, Plaintiff visited Dr. Michael E. Tofteland who indicated that Plaintiff holds his hand in a locked position, all of his fingers were swollen, and the dorsum of his hand was swollen. (Tr. 276). Plaintiff's x-rays were normal. (Tr. 276). Dr. Tofteland diagnosed Plaintiff with RSD, and recommended Plaintiff start physical therapy. According to

Dr. Tofteland, it would take six months to a year for Plaintiff to get better. (Tr. 276). Dr. Tofteland did not see any acute fractures or dislocations. (Tr. 277).

On March 5, 2009, Plaintiff visited Dr. Tofteland for a new prescription for physical therapy. (Tr. 275). Plaintiff's right hand was still swollen. (Tr. 275).

On March 17, 2009, Plaintiff went to Beaumont Hospital for surgery. He told Dr. Rebecca R. Clemans that he has some pain relief when moving his right hand, but that physical therapy does not help. (Tr. 268). Also on March 17, 2009, Plaintiff visited Dr. Sean Conroy at Beaumont Hospital. Plaintiff told Dr. Conroy he does not have any feeling in his hand, and he has difficulty opening and moving his hand. Plaintiff reported the pain is "constant and stabbing." Plaintiff said physical therapy is difficult due to pain. (Tr. 265). Dr. Conroy concluded that Plaintiff has decreased wrist and finger strength in the right hand and substantial decreased range of motion in his right hand. (Tr. 266).

On March 20, 2009, Dr. Conroy removed Plaintiff's catheter and expressed to Plaintiff the importance of participating in therapy. Dr. Conroy stated that the function of his hand depended on how much he could do in therapy. (Tr. 263-264). Plaintiff stated he had a painful episode and passed out at therapy. (Tr. 263).

On April 2, 2009, Plaintiff visited Dr. Tofteland and stated he has more range of motion at his wrist, but it was "very painful" for him to extend his fingers. (Tr. 274).

On April 16, 2009, Dr. Sean Conroy at Beaumont Hospital gave Plaintiff an interclavicular catheter. (Tr. 259).

On April 20, 2009, Plaintiff visited Dr. Tofteland who indicated that Plaintiff's right hand was tightly clenched, and his nails are cutting into his palm. (Tr. 274).

On May 11, 2009, Plaintiff missed his appointment with Dr. Tofteland. (Tr. 273). Plaintiff cancelled his appointment with Dr. Tofteland on May 26, 2009, because he did not have transportation. (Tr. 273).

In May 2009, Dr. John L. Pappas at the William Beaumont Hospital Troy Pain Center indicated that Plaintiff suffers from right upper extremity complex regional pain syndrome. (Tr. 256).

On June 1, 2009, Plaintiff told Dr. Tofteland that he was attending physical therapy at Hand Surgery Associates, and he is "slowly progressing." Dr. Tofteland indicated that Plaintiff cannot fully extend his fingers, but therapy is helping. (Tr. 273).

### 3. Vocational Expert

During the hearing on May 26, 2011, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, educational background, past relevant work experience, with Plaintiff's limitations. (Tr. 49). The VE testified that such individual could not perform Plaintiff's past relevant work. However, such an individual could work at the light exertional level as an inspector (2,000 jobs in southeast Michigan; 4,000 jobs in the State). Such an individual could also work at the sedentary exertional level as a surveillance system monitor (1,400 jobs in southeast Michigan; 2,800 jobs in the State). (Tr. 49).

According to the VE, "[Plaintiff] testified to significant pain complaints. And I guess, depending on the severity of the pain, it could impact his ability to perform even the jobs I've testified to." (Tr. 49-50). Finally, the VE "presume[d]" that Plaintiff could not perform any work if his pain caused him to lose his ability to focus and concentrate. (Tr. 50).

### C. *Plaintiff's Claims of Error*

Plaintiff says the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues: (1) the pain he endures from his right hand injury, alone, is sufficient to render him disabled; and (2) his testimony about the intensity, persistence and limiting effects of his symptoms is credible.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545 (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C. Analysis and Conclusions

#### 1. The ALJ Concluded that Plaintiff's RDS of the Right Hand with Continual Pain was of Such a Severity that it Could Reasonably be Expected to Produce the Alleged Disabling Pain

Plaintiff first argues that the pain he endures from his right hand injury, alone, is sufficient to render him disabled.

The Sixth Circuit has discussed the analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). In his findings, the ALJ determined that the medical evidence indicated that Plaintiff had severe RDS of the right hand with continual pain. (Tr. 22). This finding is supported by substantial medical evidence. Accordingly, Plaintiff meets the first prong of the *Duncan* standard – there is objective medical evidence of an underlying medical condition.

As to the second prong – whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain – "[a]fter careful consideration of the evidence, the [ALJ found] that [Plaintiff's] medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]"

### 2. There is Substantial Evidence to Support the ALJ's Conclusion that Plaintiff's Statements Concerning the Intensity, Persistence and Limiting Effects of His Symptoms are not Credible

Plaintiff next argues that the ALJ erred by discounting his statements concerning the intensity, persistence and limiting effects of his symptoms. Specifically, Plaintiff says the ALJ gave too much weight to the fact that Plaintiff collected 26 weeks of unemployment benefits.

The ALJ stated:

Based on the medical evidence, the undersigned acknowledges [Plaintiff's] inability to use his right hand due to a work related injury. However, several factors were considered in determining the credibility of [Plaintiff's] allegations.

For example, in assessing the credibility of [Plaintiff's] allegations, the undersigned addresses the issue of unemployment benefits. [Plaintiff] testified that he collected unemployment benefits for 26 weeks, but did not receive an extension. Though not necessarily material to the ultimate determination of whether or not [Plaintiff] is disabled, his application for and receipt of unemployment compensation does adversely affect the credibility of [] his testimony *Jernigan v. Sullivan*, 948 F2d 1070. [Plaintiff] testified that while going through treatment, he would apply for positions at auto part stores and machine shops. Nevertheless, he claimed it was his impression that these employers did not want a one-handed person, inasmuch as once they observed his loss of function in the affected hand they would simply say they would contact him in the future. While this may well be the case, [Plaintiff] nevertheless continued to certify himself for and receive unemployment benefits from the State of Michigan. This of course included his certification that he is able to engage in suitable [employment] and ready to participate in full-time employment.

The record reflects that [Plaintiff] has made inconsistent statements regarding matters relevant to the issue of disability. Although there is a reasonable contradiction between alleging an inability to work due to disability and, at the same time, certifying that one is able to engage in suitable full-time work, the receipt of unemployment benefits does not preclude the receipt of Social Security

-13-

> Disability benefits.  However, it is one of the many factors that must be considered in determining whether [Plaintiff] is disabled[.]

(Tr. 24-25).

This Magistrate Judge agrees with Plaintiff's argument that "the mere receipt of unemployment insurance benefits does not prove ability to work." (Pl's Br. at p. 8). However, it is a factor that the ALJ must consider.

The Sixth Circuit has held that collecting unemployment benefits (requiring recipients to state that they are seeking work) stands at odds with allegations of disability under the Social Security Act. *See Workman v. Comm'r of Social Sec.*, 105 F.Appx. 794, 801 (6th Cir. 2004) ("[a]pplications for unemployment and disability benefits are inherently inconsistent") (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)); *see also Bowden v. Comm'r Social Sec.*, 1999 WL 98378, *7 (6th Cir. 1999) (the claimant "offers no reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work").

As correctly stated by the ALJ, the fact that Plaintiff collected unemployment benefits "does not preclude the receipt of Social Security Disability benefits. However, it is one of the many factors that must be considered[.]" (Tr. 25).

In addition to the fact that Plaintiff collected unemployment benefits, in assessing Plaintiff's credibility, the ALJ found: (1) Plaintiff's "symptoms may not have been as serious as has been alleged" because he "failed to follow-up on recommendations made by the treating doctor"; (2) Plaintiff missed three out of six therapy appointments; (3) Plaintiff initially refused to have an EMG; (4) Plaintiff's treatment has been "essentially routine and/or conservative in nature"; and (5) "[t]he fact that [Plaintiff] has not exhausted all medical means possible to improve the use of his hand undermines [Plaintiff's] credibility." (Tr. 25-26).

This Magistrate Judge finds substantial evidence supports the ALJ's decision that Plaintiff's subjective complaints of pain were not entirely credible.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Mark A. Randon
                                                Mark A. Randon
                                                United States Magistrate Judge

Dated: June 28, 2012

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, June 28, 2012, by electronic and/or ordinary mail.*

<u>*s/Melody Miles*</u>
*Case Manager*